UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MARGARET DYJEWSKA,

                        Plaintiff,        **No. 1:15-cv-00532(MAT)**
                                                          **DECISION AND ORDER**
         -vs-

CAROLYN W. COLVIN, ACTING COMMISSIONER
OF SOCIAL SECURITY,

                        Defendant.

---

## INTRODUCTION

Represented by counsel, Margaret Dyjewska ("Plaintiff") instituted this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner")[1] denying her application for Disability Insurance Benefits ("DIB"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## PROCEDURAL STATUS

Plaintiff protectively filed an application for DIB on June 26, 2012, alleging disability commencing September 29, 2010, due to lumbosacral spondylosis, depression, and panic attacks. The application was denied on October 12, 2012, and Plaintiff timely

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted, therefore, for Acting Commissioner Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

requested a hearing. On January 9, 2014, administrative law judge Robert T. Harvey ("the ALJ") held a hearing in Buffalo, New York, at which Plaintiff appeared with her attorney and testified. Josiah Pearson, an impartial vocational expert ("the VE") also testified. (T.33-62).[2]

On March 6, 2014, the ALJ issued a decision finding Plaintiff not disabled. (T.12-32). In particular, the ALJ found that Plaintiff has the "severe" impairments of status post attempted lumbar arthroplasty and anterior lumbar interbody fusion L5-S1, major depressive disorder, anxiety, and lumbar spondylosis. (T.17). Nevertheless, the ALJ found, Plaintiff retains the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she has occasional limitations in bending, climbing, stooping, squatting, kneeling, balancing and crawling; occasional limitations in pushing and pulling with the upper extremities; and occasional limitations in the ability to understand, remember and carry out detailed instruction. (T.19). The ALJ then relied on the VE's testimony that an individual of Plaintiff's age (46 years-old on the application date), and with her education, work experience, and RFC, can perform her past relevant work of housekeeping cleaner, a light exertion, unskilled job. (T.26). Accordingly, the ALJ found that Plaintiff had not been

---

[2] Citations to "T." in parentheses refer to pages from the certified administrative transcript.

under a disability as defined in the Act from her onset date, through her date last insured of December 31, 2015.

The Appeals Council denied Plaintiff's request for review on April 20, 2015, making the ALJ's decision the final decision of the Commissioner. This action followed.

Plaintiff and Defendant have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court will discuss the record evidence further below, as necessary to the resolution of the parties' contentions. For the reasons set forth herein, the Commissioner's decision is affirmed.

**DISCUSSION**

**I. Failure to Properly Apply the Treating Physician Rule (Plaintiff's Point III)**

Plaintiff argues that the ALJ erred in giving only "little weight," (T.24), to the opinion of her treating psychiatrist, Dr. Richard Bennett. The Commissioner counters that the ALJ properly relied on Dr. Bennett's objective examination findings and GAF[3] scores to conclude that his report was not entitled to controlling weight. The medical opinion of a claimant's

---

[3] The GAF, or Global Assessment of Functioning, "is a scale promulgated by the American Psychiatric Association to assist in tracking the clinical progress of individuals [with psychological problems] in global terms." Kohler v. Astrue, 546 F.3d 260, 262 n. 1 (2d Cir. 2008) (internal quotations omitted); see also American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 376-77 (4th ed., text revision, 2000) ("DSM-IV-TR").

treating physician or psychiatrist will be given "controlling" weight if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003). Medically acceptable clinical and laboratory diagnostic techniques include consideration of a "patient's report of complaints, or history, [a]s an essential diagnostic tool." 335 F.3d at 107. In evaluating a treating source's opinion, the regulations instruct adjudicators to consider the following factors:

(1) "[l]ength of the treatment relationship and the frequency of examination;" (2) "[n]ature and extent of the treatment relationship;" (3) "[s]upportability" of the opinion; (4) "[c]onsistency" of the opinion "with the record as a whole;" (5) whether the source is opining about an area in which he or she specializes; and (6) "[o]ther factors" brought to the Commissioner's attention. 20 C.F.R. § 404.1526(d)(2) (eff. Aug. 24, 2012, until Mar. 26, 2017).

A corollary to the treating physician rule is the so-called "good reasons rule," which provides that the SSA "will always give good reasons in [its] notice of determination or decision for the weight [it] gives [claimant's] treating source's opinion." Clark, 143 F.3d at 118 (quoting 20 C.F.R. §§ 404.1527(d)(2),

416.927(d)(2); alterations in Clark). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific . . . .'" Blakely v. Comm'r of Social Sec., 581 F.3d 399, 406 (6th Cir. 2009) (quoting Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996)).

Here, the record documents that Plaintiff saw psychiatrist Dr. Bennett on fourteen occasions for medication checks from August 9, 2010, through November 15, 2012. Dr. Bennett performed a mental status examination and assigned Plaintiff a GAF score on each of these visits. (T.459-486). Dr. Bennett noted Plaintiff displayed depression on nine visits (T.459, 463, 465, 467, 469, 471, 481, 483, 485), anxiety on three visits (T.473, 475, 477), and normal mood on the other two visits (T.461, 479). However, on each visit, all of the other mental status examination findings were normal. (T.459, 461, 463, 465, 467, 469, 471, 473, 475, 477, 479, 481, 483, 485). Less than a month after his last visit with Plaintiff on November 15, 2012, Dr. Bennett issued his mental RFC assessment on December 3, 2012. This report was essentially inconsistent with the ability to perform any full-time substantial gainful employment. For instance, Dr. Bennett opined that Plaintiff was "unable to meet competitive standards" in multiple mental abilities and aptitudes necessary to do unskilled, semi-skilled, and skilled work, and would be absent more than four days a month due to her impairments or treatment. On November 15, 2012, however, Dr. Bennett assigned

Plaintiff a GAF of 70. GAF scores from 61-70 indicate that the individual has "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning," "but [is] generally functioning pretty well, has some meaningful personal relationships." DSM–IV–TR at 34.

In his decision, the ALJ explained that he assigned Dr. Bennett's opinion "little weight" because

> Dr. Bennett's mental residual functional capacity assessment dated December 3, 2012 (Exhibit 14F, pp. 29-33) is given little weight because it is not supported by Exhibits 6F, 21F and 23F plus the GAF scores from Dr. Bennett during this treatment period does not support the mental residual functional capacity given.

(T.24). Thus, the ALJ relied on the alleged inconsistency between Dr. Bennett's opinion and Plaintiff's GAF scores, and its alleged inconsistency with Exhibits 6F, 21F, and 23F.

Exhibits 21F and 23F are progress notes from Plaintiff's orthopedic surgeon, Dr. Narendra Kansal. While these records do not pertain to Plaintiff's treatment for her mental impairments, Dr. Kansal noted on January 14, 2013, that Plaintiff has returned to working in a "part-time/light duty" capacity and was "quite comfortable with that." (T.542). On February 14, 2013, Plaintiff reported that she was working light duty on a part-time basis. (T.551). On May 13, 2013, Dr. Kansal noted that Plaintiff was "quite content" with her part-time situation, although he did "not have any particular problem" with her returning to full-time work. (T.553). Plaintiff 's activities in this regard are inconsistent

-6-

with Dr. Bennett's opinion that, e.g., she was unable to meet competitive standards in dealing with normal work stress or maintain regular attendance and be punctual, within usually strict tolerances. (T.489).

The other record cited by the ALJ, Exhibit 6F, is the August 6, 2012[4] report issued by consultative psychologist Dr. Susan Santarpia. On mental status examination, Dr. Santarpia noted that Plaintiff had full affect with appropriate speech and thought content; had neutral mood; had intact attention, concentration, and recent and remote memory skills; had average cognitive functioning; and had fair insight and judgment. (T.348). For her mental source statement, Dr. Santarpia opined that Plaintiff could follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, make appropriate decisions, relate adequately with others, and appropriately deal with stress within normal limits; Dr. Santarpia observed Plaintiff's psychiatric problems did not appear to be significant enough to interfere with her ability to function on a daily basis. (T.349). The ALJ's statement that Dr.

---

[4] Treatment notes from around that time with Dr. Bennett indicate that on July 10, 2012, Plaintiff told Dr. Bennett that she was depressed; however, Dr. Bennett assigned a GAF of 80. On August 31, 2012, Plaintiff told Dr. Bennett that she was "a little better," although she displayed some depression at the appointment. Dr. Bennet assigned a GAF of 70.

Bennett's extremely restrictive opinion is inconsistent with Dr. Santarpia's report is supported by the record.

The ALJ also noted that while Dr. Bennett's treatment notes from for the period September 23, 2010 to November 15, 2011, document that Plaintiff experienced some depression and anxiety, the "GAF ranges were between 70-80 . . . ." (T.24). With regard to GAF scores from 71-80, the DSM-IV-TR notes that "[i]f symptoms are present, they are transient and expectable [sic] reactions to psychological stressors;" the individual has "no more than [a] slight impairment in social, occupational, or school functioning[.]" DSM-IV-TR at 34. As noted above, GAF scores from 61-70 indicate that the individual has "[s]ome mild symptoms" "but [is] generally functioning pretty well. . . ." Id.

Courts in this and other Circuits have found that although an ALJ was permitted to consider whether a treating source's opinion is consistent with the GAF scores assessed by him or her, e.g., Garcia v. Colvin, No. 13-CV-6433P, 2015 WL 1280620, at *7 (W.D.N.Y. Mar. 30, 2015) (collecting cases), it is improper to discount an opinion solely on the basis of that alleged inconsistency, e.g., Wiggins v. Colvin, CASE NO. 3:13CV1181(MPS), 2015 WL 5050144, at *4 (D. Conn. Aug. 25, 2015) (noting that "[t]he [Commissioner] has never viewed GAF scores as dispositive," "[a]nd courts in this Circuit have criticized ALJ's for relying on GAF scores alone as a basis for rejecting a treating opinion") (collecting cases). As

discussed above, however, the ALJ did not rely solely on the basis of the inconsistency between the GAF scores assigned consistently by Dr. Bennett and his opinion on Plaintiff's mental RFC. See, e.g., Foreman v. Colvin, No. 1:12CV2120, 2013 WL 3200615, at *11 (N.D. Ohio June 24, 2013) (finding that treating source's "opinions that Foreman is markedly impaired in her abilities to maintain a schedule, complete a normal workday/workweek, or perform at a consistent pace without an unreasonable number of interruptions or work absences are simply inconsistent with the 'mild symptoms' represented by a GAF score of 65 to 70"); Hill v. Astrue, No. 12-CV-50S, 2013 WL 209647, at *3 (W.D.N.Y. Jan. 17, 2013) (treating psychiatrist's opinion "that Hill had either no ability or a limited ability to perform activities associated with unskilled work" "is inconsistent with Dr. Lopez's reported GAF score of 70 (indicating Hill had only mild symptoms or some difficulty in social, occupational or school settings, but was generally functioning well, and his treatment records noting that Hill's mood was stable, he was functioning better, and was calm and relaxed"). Therefore, the Court finds that the ALJ did not commit legal error in weighing Dr. Bennett's opinion, and that his rationale for declining to afford it controlling weight was supported by substantial evidence.

**II. Failure to Weigh the Opinion of the State Agency Review Psychiatrist (Plaintiff's Point I)**

Plaintiff asserts that the ALJ committed legal error in failing to mention the opinion evidence provided by State Agency Review Psychiatrist Juan C. Echevarria, M.D. As Plaintiff points out, 20 C.F.R. § 404.1527(e)(2)(ii) provides in relevant part that "[u]nless a treating source's opinion is given controlling weight," which did not occur here,

> the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the Social Security Administration].

20 C.F.R. § 404.1527(e)(2)(ii).

Dr. Echevarria completed a Psychiatric Review Technique on August 21, 2012, noting that Plaintiff has major depressive disorder, recurrent, unspecified; depressive disorder, not otherwise specified ("NOS"); generalized anxiety disorder; anxiety disorder, NOS; and panic disorder without agoraphobia, stabilized. (T.360). Dr. Echevarria opined that she has "moderate" restriction of activities of daily living, and "moderate" difficulties in maintaining concentration, persistence or pace. (T.365). In a mental RFC assessment, Dr. Echevarria stated that Plaintiff has "moderate" limitations in the following work-related abilities: maintaining attention and concentration for extended periods; completing a normal workday and workweek without interruptions from

-10-

psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; and responding appropriately to changes in the work setting. (T.369-70).

The Commissioner argues that the ALJ must have considered Dr. Echevarria's report because he "repeatedly stated that he carefully considered the entire record, which necessarily included Dr. Echevarria's assessment." (Defendant's Memorandum of Law ("Def's Mem.") citing T.15, 17, 19, 25). The Court agrees that the ALJ did not follow the dictates of the regulations in failing to explicitly set forth the weight he assigned to Dr. Echevarria's opinion, it was harmless. As the Commissioner argues, Dr. Echevarria's report would not change the ALJ's determination because it does not support a finding of disability. See, e.g., Blabac v. Comm'r of Soc. Sec., No. 3:08-CV-0849, 2009 WL 5167650, at *9 (N.D.N.Y. Dec. 18, 2009) (collecting cases finding that ALJ's failure to weigh medical opinions was harmless error where those opinions either did not conflict with the ALJ's findings or written consideration of the opinions would not have changed the outcome of the ALJ's decision). "[W]here the application of the correct legal principles to the record could only lead to one conclusion, there is no need to require agency reconsideration." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

**III. Erroneous Credibility Assessment (Plaintiff's Point II)**

Plaintiff takes issue with the ALJ's finding that although her medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements describing the intensity, persistence, and limiting effects of those symptoms were not fully credible. (T.25).

Plaintiff argues that the ALJ should have found her subjective complaints fully credible based on her prior work history and efforts to work after her alleged disability onset date. "To be sure, 'a good work history may be deemed probative of credibility.'" Wavercak v. Astrue, 420 F. App'x 91, 94 (2d Cir. 2011) (unpublished opn.) (quoting Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998); citation omitted). Plaintiff did have a favorable work history, but that "is 'just one of many factors' appropriately considered in assessing credibility." Id. (quoting Schaal, 134 F.3d at 502). Plaintiff also asserts that her documented efforts to work should weigh in favor of finding her to be fully credible. However, "Social Security regulations provide that employment 'during any period' of claimed disability may be probative of a claimant's ability to work[.]" Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002) (quoting 20 C.F.R. §§ 404.1571, 416.971 (emphasis omitted)). Thus, it would not have been impermissible for the ALJ to have drawn an adverse inference based on her ability to perform light-duty work, albeit

-12-

on a part-time basis, during the period for which she claims to be totally disabled.

Ultimately, "[i]t is the function of the [Commissioner], not [the reviewing court], . . . to appraise the credibility of witnesses, including the claimant." Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983). Thus, courts generally must defer to the Commissioner's credibility determination as long as it is supported by substantial evidence. Selian v. Astrue, 708 F.3d 409, 420 (2d Cir. 2012). Such is the case here. The ALJ considered the proper regulatory factors in evaluating Plaintiff's subjective statements, including the objective medical evidence; her doctors' medical opinions; her prior work record; her daily activities; and her medication regimen and other therapeutic measures. (T.20 citing 20 C.F.R. § 404.1529(c)). The ALJ did not misstate or mischaracterize the record in applying the regulatory factors to the record evidence. As discussed above in connection with the ALJ's weighing of Dr. Bennett's opinion, there was substantial evidence supporting the ALJ's determination that Plaintiff's subjective complaints did not accurately reflect her actual limitations. See, e.g., Lewis v. Colvin, 548 F. App'x 675, 678 (2d Cir. 2013) (unpublished opn.) ("[T]he ALJ's decision not to credit Lewis's subjective testimony regarding his symptoms was appropriate where his testimony was not supported by the objective medical evidence or evidence regarding

his daily activity as set forth in the ALJ's opinion and supported by the record."); footnote omitted)..

**CONCLUSION**

For the foregoing reasons, the Commissioner's decision is affirmed. Defendant's motion for judgment on the pleadings is granted, and Plaintiff's motion for judgment on the pleadings is denied.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

HON. MICHAEL A. TELESCA
United States District Judge

Dated: February 3, 2018
Rochester, New York.